IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CRAIG ALLEN MEYEN, | ) Civil No.: 3:13-cv-00936-JE |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

George Wall
1336 E. Burnside Street, Suite 130
Portland, OR 97214

  Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Lisa Goldoftas
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900
Seattle, WA 98104-7075

  Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Craig Meyen brings this action against the Commissioner of Social Security (the Commissioner) pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of a decision denying his application for Supplemental Security Income (SSI). Plaintiff seeks an Order reversing the decision of the Commissioner and remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed an application for SSI on September 2, 2010, alleging that he had been disabled since September 1, 2009.

Plaintiff's claim was denied initially on November 24, 2010, and was denied upon reconsideration on January 12, 2011. He timely requested an administrative hearing, and a hearing was held before Administrative Law Judge (ALJ) Marguerite Lokey on July 18, 2011, in Dallas, Texas. Plaintiff and Michael Gartman, a Vocational Expert (VE), testified at the hearing.

In a decision dated October 11, 2011, ALJ Lokey found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on May 13, 2013, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on May 15, 1969 and was 42 years old at the time of the hearing. He graduated from high school and completed a year of college. He has past relevant work

experience as a material handler in 1998. Plaintiff reported that he last worked in September, 2009.

In his initial application Plaintiff alleged that he is disabled because of chronic liver disease, gastroesophageal reflux disease (GERD), and obesity. At his hearing before the ALJ, he testified he was disabled because of liver disease and hearing loss.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment

FINDINGS AND RECOMMENDATION – 3

is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

  Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

  Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

  At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## Medical Record

Plaintiff was diagnosed with hepatitis C (HCV) genotype 3a in May of 2010. (Tr. 249). In notes of a visit dated September 1, 2010, Dr. Ann Nguyen, MD indicated that Plaintiff had recently moved from Oregon to Texas and established care at the clinic in December of 2009. She noted that his visit was for evaluation of his HCV. Plaintiff reported fatigue, joint pain and some lower abdominal pain but otherwise felt well. In a chart note also dated September 1, 2010, Dr. Amit Singai, MD, assessed Plaintiff's response to therapy for his HCV would be near 60%.

A liver biopsy was performed on September 8, 2010. The biopsy revealed grade III, liver disease with stage I fibrosis.

In notes of a visit dated September 21, 2010, Plaintiff reported occasional right lower quadrant and left lower quadrant abdominal pain. A physical exam of Plaintiff's systems was positive for joint pain but negative for myalgias and neck pain. No reports of fatigue were noted. Dr. Tojo Thomas opined that because Plaintiff's hepatitis was genotype 3a, it was an easier form to treat. However, Dr. Thomas noted that Plaintiff

> has only grade I disease on biopsy, additionally both macro- and microvesicular in nature, occupying approximately 50% of the liver tissue surface area, which may make therapy for hep c slightly less effective. With newer medications to be available in future and mild stage of disease at this point would defer therapy for now.

In a treatment note also dated September 21, 2010, Dr. Andres Roig indicated that "[g]iven ~60% recovery rate in GT3 in this patient (per Dr. Singal; and perhaps possibly lower given degree of steatosis), low grade of fibrosis, will not pursue Rx at present. Can follow up in 6 months."

On October 4, 2010, Plaintiff was seen for an audiological evaluation due to a right ear infection, longstanding mixed hearing loss and middle ear pathology on the right side. Pure tone findings indicated responses consistent with mild/moderate sensorineural hearing loss at 3-4kHz on the left and profound-to-moderate mixed hearing loss on the right. Speech recognition with NU-6 word lists via monitored live voice were excellent for both ears.

In a "Medical Release/Physician's Statement" dated October 14, 2010, treating physician Narin Safari, MD, opined that, due to joint pain and fatigue stemming from his hepatitis C, Plaintiff was unable to work but that the disability was not permanent and was expected to last 6 months or less.

In reports dated November 20, 2010 and January 10, 2011, State Agency reviewing physicians Dr. Laurence Ligon and Dr. Roberta Herman opined that Plaintiff had no severe impairments.

In a letter dated January 27, 2011, Dr. Reem Ghalib of Texas Digestive Disease Consultants and the North Texas Research Institute confirmed that Plaintiff was being screened for a clinical trial for treatment of his HCV. Dr. Ghalib noted that the current treatment regimen for HCV which consisted of Pegasys and Ribavirin, can cause numerous side effects, including severe fatigue, flu-like symptoms, muscle aches and joint pain and that these side effects vary between patients. Dr. Ghalib indicated that Plaintiff would be monitored and would be assisted in managing specific side effects. He also noted that "the most important factor in reducing medication side effects is the conusumption of fluids." Dr. Ghalib opined that the future prognosis of Plaintiff's liver disease depended upon the response to therapy.

In "Medical Release/Physician's Statement" dated February 28, 2011, treating physician Dr. Ghalib opined that due to chronic hepatitis C, joint pain and fatigue, Plaintiff was unable to

work but that the disability was not permanent and was expected to last 6 months or less.

In a Screening Report for his clinical trial, Plaintiff's physical examination was normal, with no indications of musculoskeletal pain or weakness. Plaintiff reported that he had experienced ongoing fatigue since 2010, abdominal pain since February 2010, joint pain in all joints since June 2011, rash and itching since June 2010, ongoing ankle swelling since September 2010 and ongoing tobacco use since 1975.

In Parkland Hospital treatment notes dated March 22, 2011, Plaintiff's physical exam was unremarkable with the exception of his HCV and GERD diagnoses. Drs. Thomas and Saleh Alqahtani noted that Plaintiff was "keen to start treatment for HCV" and that they were willing to start him on Peg IFN and Ribavirin but Plaintiff wanted to seek treatment at another facility.

In April 2011, Plaintiff began treatment for HCV through the clinical study at North Texas Research Institute and Methodist Hospital, Dallas. Treatment notes from the trial start date on April 11, 2011 through Plaintiff's visit on May 20, 2011, indicate Plaintiff received Ribavirin and the study medication. Treatment notes dated June 6, 2011 indicate that Plaintiff's then current doses included Ribavirin, Peg IFN and the study medication.

The "Adverse Event Flowsheet" maintained as part of the clinical trial indicates that Plaintiff reported that his fatigue and joint pain had worsened with the start of treatment. Plaintiff reported that both the initial and most extreme intensity of these symptoms was "mild" and that they were "intermittent" in frequency. No adjustment to Plaintiff's dosage or other intervention was taken.

A treatment note dated June 21, 2011, indicates that Plaintiff withdrew his consent for the study because he was moving to Oregon.

FINDINGS AND RECOMMENDATION – 7

**Testimony**

Plaintiff testified as follows at the hearing before the ALJ:

Plaintiff last worked in May or June of 2009. His most recent employment had been working for contractors in the construction industry. He moved from Oregon to Texas in 2009.

Plaintiff was 6'2" and 290 pounds at the time of the hearing. When asked what problems would limit his ability to work, Plaintiff testified it was "pretty much the liver disease I have."

Plaintiff cannot hear out of his right ear. He has worn a hearing aid for three or four years but was not wearing it during the proceedings with the ALJ. He only finds it difficult to communicate with people if they are at a great distance or if they approach him from his right side and are not speaking very loudly.

Plaintiff was diagnosed with HCV in Dallas at the Liver Clinic at Parkland. Doctors there didn't want to treat him at first and told him that it was because he was overweight. He was told to return in six months. When he returned, they were willing to treat him but he informed them that he would be seeking treatment at another facility.

Plaintiff then began receiving treatment through a clinical trial for an experimental medication. He did not know whether he was receiving the research medication or a placebo. After three months, his lab results showed no improvement and Plaintiff was switched to standard treatment in addition to the research medication.

Plaintiff started experiencing "a lot" of fatigue in 2008. After walking 15 to 30 minutes he has to stop. Walking is made more difficult by the joint pain he experiences. He has had pain for over a year. It is "all-over" pain that "makes me weep" and that has "some" effect on his ability to sit and stand. He takes over-the-counter medications and uses ice packs to alleviate the pain.

Plaintiff lives with his mother. He spends his time reading, watching television or on the internet. He has some friends that he calls or sees. He moves around "day by day" and some days are better than others. He likes to go outside but cannot be in the sun for extended periods of time because of his medications. He goes shopping with his mother but has to sit down after 30 or 45 minutes of walking around the store. He and his mother alternate 15 minute intervals when mowing the lawn because of Plaintiff's sun sensitivity. He helps bring groceries in to the house, helps in keeping the house picked up and with laundry and will wash a dish as it becomes dirty. His mother does the majority of the cleaning and cooking.

Plaintiff's weekly injection of pegylated interferon (peg IFN) "knocks [him] out" for three or four days. During that time he is like "a zombie," moving slowly and feeling "drained." He spends most of the day lying in bed or in a chair. Before starting treatment he experienced fatigue but it was less severe. After an hour of activity he would have to stop and sit down for a half hour. When asked by his attorney if, prior to being in the treatment study, he could have done a "sit-down job," Plaintiff responded "if I had to walk around the office all day I don't think I could do it unless I was sitting in a chair all – most of the day." When the ALJ sought clarification about what Plaintiff's level of fatigue would be in a sedentary job, Plaintiff responded "I can't answer that."

Plaintiff does not know how long his treatment will last. He suspended his participation in treatment because he will be moving back to Oregon but the clinical trial sponsor will continue to provide treatment medications once he establishes care after his move.

### **ALJ's Decision**

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since applying for SSI on September 2, 2010.

At the second step, the ALJ found that Plaintiff had the following severe impairments: liver disease with fibrosis and hepatitis C, obesity, and hearing loss.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P., App. 1.

The ALJ next assessed the Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the capacity to perform sedentary work except that he could not work directly with the public; could not tolerate exposure to excessive heat or cold, could only occasionally climb, balance, stoop, kneel, crouch, and crawl; and was limited to simple, routine, work-related tasks. In making this determination, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible.

At the fourth step of her disability analysis, the ALJ found that Plaintiff could not perform his past relevant work.

Based upon the testimony of the VE, at the fifth step the ALJ found that Plaintiff could perform other jobs that existed in substantial numbers in the national economy. The ALJ cited lens inserter, escort vehicle driver, and final assembler as examples of such jobs. Based upon this finding, she concluded that Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff asserts only a single assignment of error, contending that the ALJ improperly rejected Plaintiff's testimony.

### A. Standards for Evaluating Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide

"clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, an ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7.  An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d at 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B. Analysis**

The ALJ found that the documentary record established an underlying medical condition capable of producing some pain and limitations in functioning, but that a number of inconsistencies in the record undermined the credibility of Plaintiff's statements regarding the intensity, persistence and limiting effects of his impairments.

Because Plaintiff here produced evidence of impairments that could reasonably be expected to produce some symptoms and there was no affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's

testimony was not wholly credible. Based upon a careful review of the record, I conclude that the ALJ's reasons for discounting Plaintiff's testimony satisfied that standard.

The ALJ cited Plaintiff's physicians' disinclination to treat his HCV in September of 2010 and their recommendation that he follow-up in six months. The ALJ noted that Plaintiff's treating physicians were reluctant to treat him "due to the mild state of his disease process." Plaintiff argues that this was a "misreporting" of the medical record because the physicians' recommendation was also based on their opinion that successful treatment of the disease was less likely due to its nature. I disagree.

Treatment notes from September, 2010 indicate that a liver biopsy showed stage 1 fibrosis. Dr. Thomas opined that Plaintiff has "an easier from of Hep C to treat, however, has only grade 1 disease on biopsy" and that the nature of his condition "may make therapy for hep c *slightly* less effective. With newer medications to be available in the future and *mild state of disease at this point* would defer therapy for now." (emphasis added). The ALJ also cited extensively to the medical record, which indicates that Plaintiff had normal examinations of the abdomen, mild fibrosis, Grade I liver disease and the genotype of HCV most easily treated with Interferon therapy. The ALJ's interpretation of the evidence is reasonable, is supported by the record and is a convincing reason for discounting Plaintiff's credibility. See Tommasetti, 533 F.3d at 1040.

In support of her credibility determination, the ALJ asserted Plaintiff's use of over-the-counter pain medications with documented improvement and without side-effects was inconsistent with his allegations of severe, disabling fatigue and pain. Plaintiff argues that this was error. He argues that "perhaps for a person with liver disease, anything stronger is not a good idea." Such an argument is unpersuasive. The treatment a claimant uses to alleviate pain is

a relevant factor in evaluating the intensity and persistence of symptoms, 20 C .F.R. §§ 404.1529(c)(3), 416.929(c)(3). Therefore, the treatment and medications a claimant uses to relieve pain is relevant in assessing credibility, Burch v. Commissioner, 400 F.3d 676, 681 (9th Cir. 2005), and an ALJ may consider reliance on over-the-counter medication in evaluating a claimant's allegations concerning the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). Plaintiff testified that he takes over-the-counter medications and uses ice packs to alleviate his pain. His reliance on over-the -counter pain medications and the documented improvement in his pain without side-effects were legitimate considerations in evaluating his credibility. The ALJ reasonably concluded that Plaintiff's reliance on these over-the-counter medications was inconsistent with his allegations of disabling levels of pain.

The ALJ also asserted that Plaintiff alleged disability based in part on hearing loss but that he was able to engage in substantial gainful activity despite his history of long-term hearing loss.  She also noted that Plaintiff had not worn his hearing aid to the administrative hearing but appeared to understand her satisfactorily and testified that he only finds it difficult to communicate with people if they are at a great distance or if they approach him from his right side and are not speaking very loudly.  As the Commissioner correctly notes, a tendency to exaggerate is a legitimate consideration in determining credibility.  See Tonapetyan, 242 F.3d at 1148.  The ALJ reasonably discounted Plaintiff's testimony based on these inconsistencies.

Evidence that Plaintiff had a sporadic work history and zero to minimal posted wages even before his alleged onset of disability also supported the ALJ's credibility finding. As the Commissioner correctly notes, evidence of a poor work history and "little propensity to work" is a relevant factor in evaluating credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.2002).

FINDINGS AND RECOMMENDATION – 14

In support of her credibility determination, the ALJ also noted that Plaintiff alleged at his hearing that he became tired when walking but was unable to satisfactorily explain why he would have been unable to meet the demands of sedentary work before beginning treatment for HCV. Plaintiff argued that he was flustered at the hearing but "clearly stated that he would still have pain, and would need to move around, and that would still cause fatigue." A review of the pertinent hearing testimony reveals no such clear statement. In response to questions from his attorney as to whether he could work a "sit-down" job six to eight hours a day, Plaintiff responded "if I had to walk around the office all day I don't think I could do it unless I was sitting in a chair all – most of the day." The attorney then explained that sedentary meant spending most of the day in a chair. The ALJ then asked Plaintiff what his fatigue level would be if he were in a job where he was sitting down. Plaintiff responded, "I don't really – it's hard to answer that, because I really don't – I could sit down, but getting up, moving around, that part it – the fatigue is still there, and I'm – I'll be in pain regardless. So it's still – it varies." Plaintiff then went on to say that he could not really answer the question. The ALJ properly considered Plaintiff's equivocal testimony as to the nature of his limitations in making her credibility determination. See Tommasetti, 533 F. 3d at 1040.

The ALJ also based her credibility finding in part on the absence of objective medical evidence indicating that Plaintiff was as limited as he alleged. Certainly, a claimant's subjective pain testimony cannot be rejected solely on the grounds that it is not fully corroborated by objective medical evidence. E.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). However, medical evidence is a relevant factor in evaluating the severity and effects of a claimant's pain. Id.; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Here, the ALJ cited substantial objective medical evidence which she found was inconsistent with the degree of impairment that

Plaintiff alleged. The ALJ noted that on examination Plaintiff evidenced normal range of motion, normal reflexes, sensory functioning and muscle tone and no muscle wasting or atrophy. She also noted that he denied any emotional or psychological regression or deterioration due to chronic pain or fatigue. The ALJ cited treatment notes which reported that Plaintiff denied any headaches, depression or musculoskeletal myalgias and described him as well developed and nourished and with normal mood and affect. The ALJ also correctly noted an absence in the record of any evidence indicating that Plaintiff was expected to be unable to work for 12 continuous months. Where, as here, other reasons for an adverse credibility finding also exist, a paucity of objective medical findings undermines a claimant's credibility. See Burch, 400 F.3d at 680–81.

       These are legitimate, clear and convincing reasons for discounting Plaintiff's credibility. In addition to these reasons, the ALJ cited other bases for discounting Plaintiff's testimony which are not clear and convincing. In the first of these, the ALJ asserted that Plaintiff had "sought no medical treatment for his allegations of severe, disabling fatigue or pain" and had a history of inconsistent periods of seeking treatment for his alleged chronic disabling impairments. Plaintiff argues he interrupted treatment because he moved from Texas to Oregon and that his "desire to time his treatment properly is no indication that he does not suffer the symptoms he alleges." Plaintiff also argues that he had been treated for joint pain with Naproxen and Tramadol and that because fatigue is a side-effect of treatment for HCV, seeking treatment for fatigue "would not make much sense."

       The ALJ correctly noted that Plaintiff's alleged fatigue symptoms predate his treatment for HCV. However, after a careful review of the record I conclude that the ALJ's assertion that Plaintiff inconsistently sought treatment for his HCV or for pain is not supported by the record.

FINDINGS AND RECOMMENDATION – 16

The evidence reflects that Plaintiff was diagnosed with HCV sometime in May, 2010, underwent an abdominal ultrasound in August, 2010 and was evaluated for treatment in September, 2010. He was told by his physicians to postpone treatment for six months. In January, 2011 he was screened for an experimental treatment trial through a different medical provider and participated in treatment from February 2011 until June 2011. He withdrew from treatment in June, 2011 because he was moving from Texas to Oregon but testified at his July, 2011 hearing that he would be re-enrolled in a treatment program after his relocation.

The record also reflects that Plaintiff was treated for joint pain in December, 2010, had been prescribed Naproxen and Tramadol by his Parkland physicians since May, 25, 2010 and had been treated with Naproxen as early as 2002. I do note the inconsistency between Plaintiff's hearing testimony that he took over-the-counter medications to manage his pain, his argument in briefing that "perhaps for a person with liver disease, anything stronger is not a good idea." and treatment records that reflect continuous prescriptions for Naproxen and Tramadol. Nevertheless, this was not an inconsistency noted by the ALJ and this court is "constrained to review the reasons the ALJ asserts," Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision[.]" Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Under the circumstances, the ALJ erred in basing her credibility determination on the consistency of Plaintiff's treatment for HCV and pain.

The ALJ also asserted that Plaintiff's activities of daily living were inconsistent with his allegations of chronic fatigue and disabling pain. She noted that Plaintiff did some household chores, shopped, read, watched television, used the internet and occasionally mowed the lawn. She also cited treatment records that noted Plaintiff was seen for pain associated with the lifting

of an air conditioning unit. Plaintiff argues that the ALJ omits vital information and points out that he testified that he and his mother mow the lawn in alternating fifteen minute increments. However, Plaintiff's testimony indicated that it was necessary to alternate mowing duties because of his sun sensitivity and not due to pain or fatigue.

Nevertheless, Plaintiff's argument that Plaintiff's daily activities do not exceed his claimed limitations is well taken. A claimant need not be totally incapacitated to be found unable to engage in substantial gainful activity. Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987). Evidence that a claimant can assist in housework may be considered in determining plaintiff's ability to perform substantial gainful activity. Id. See also Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991). However, the ability to perform some household chores is not necessarily incompatible with an application for disability benefits. Cooper, 815 F.2d at 561. Only if the level of activity were inconsistent with Plaintiff's claimed limitations would these activities have any bearing upon plaintiff's credibility. There is no evidence of that here.

Though she cited some inadequate reasons for discounting Plaintiff's credibility, the ALJ cited other clear and convincing reasons for her credibility determination, and her assessment was supported by substantial evidence. Under these circumstances, the credibility determination should be upheld and the Commissioner's decision should be affirmed. See, e.g., Carmickle, 533 F.3d at 1162 (where supported by substantial evidence, ALJ's credibility determination upheld even if some reasons offered are incorrect).

## **Conclusion**

For the reasons discussed above, a judgment should be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 6, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 19th day of March, 2015.

       /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge